In the Matter of Richard C. BROWY et al., Bankrupts.

James S. BRANNON, as Trustee in Bankruptcy, Plaintiff-Appellee,

v.

Stephen D. GAY, Attorney, Defendant-Appellant.

No. 75–1641.

United States Court of Appeals, Seventh Circuit.

Jan. 6, 1976.

Bret S. Babcock, Peoria, Ill., for defendant-appellant.

James S. Brannon, Peoria, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and CHRISTENSEN,* Senior District Judge.

PER CURIAM.

Attorney Stephen D. Gay appeals from the decision of the district court confirming a bankruptcy judge's order to produce certain corporate records in Gay's possession. Gay had been the pre-bankruptcy attorney for Richard C. Browy and three companies in which Browy owned a controlling interest. On September 30, 1974, Receiver James S. Brannon filed a complaint for the turnover of corporate records of the three companies; in the alternative, the complaint prayed for an order permitting examination of the corporate records. In response Gay filed a motion to dismiss the complaint supported by an affidavit claiming an attorney's retaining lien upon the corporate books and records. The lien, Gay asserts, permits him to retain possession of the records until he is fully paid for the legal services he had rendered to Browy and the three corporations.

On November 21, 1974, the bankruptcy judge entered an order dismissing the complaint. On the following day, Brannon, who in the meantime had become Trustee in bankruptcy for Browy and the three bankrupt corporations, applied for an order under Bankruptcy Rule 205 requiring Gay to be examined in Bankruptcy Court regarding "acts, conduct, and property of the bankrupts." As a result, the bankruptcy judge ordered Gay to appear to testify on January 7, 1975. An accompanying subpoena duces tecum required him to bring with him the aforesaid corporate minutes. The bankruptcy judge denied the ensuing motion to quash the subpoena on January 31, 1975, stating:

"It is necessary for the proper administration of the bankruptcy estates that the Trustee examine the said books, papers, and records of the bankrupt[s] and that this need of the Trustee has priority over the claimed retaining lien of Stephen D. Gay."

The bankruptcy judge therefore ordered Gay to permit the bankruptcy trustee to examine the corporate books and records within 20 days. On appeal to the district court, the order was affirmed.

The sole question before us is whether the bankruptcy trustee, without paying Gay's fee, may examine the books and records of the bankrupts where there is an attorney's retaining lien on them. This Court must balance Gay's rights to payment of his fee, evidenced by the lien, against the needs of the judicially supervised bankruptcy proceeding to inquire into the transactions of the bankrupt. We believe these two interests can be accommodated by requiring Gay to

---

* Senior District Judge Albert Sherman Christensen of the District of Utah is sitting by designation.

surrender the records subject to an order of the bankruptcy court preserving the attorney's priority afforded by his lien.

■ It is well settled that an attorney's retaining lien survives bankruptcy. *In re San Juan Gold, Inc.,* 96 F.2d 60 (2d Cir. 1938); 4A Collier on Bankruptcy (14th ed.) ¶ 70.87[2] and cases cited at 1003–1004. Gay's retaining lien, cognizable under Illinois law,[1] is a passive or possessory one and may not be foreclosed.[2] The attorney simply has the right to hold the client's papers until the legal fees are paid. This right is enforceable against the client (*McCracken v. City of Joliet,* 271 Ill. 270, 111 N.E. 131 (1915)), third parties (*In re Professional Hockey Antitrust Litigation (Multidist. Lit.),* 371 F.Supp. 742 (E.D.Pa.1974); *Beardsley v. Cockerell,* 240 F.Supp. 845 (D.D.C.1965)), and the trustee in bankruptcy. *In re San Juan Gold, Inc., supra.* It makes no difference that *San Juan Gold* was a reorganization proceeding under Chapter X rather than a straight bankruptcy case; the rule is the same. *In re Allied Owners' Corporation,* 72 F.2d 255 (2d Cir. 1934); *In re Stronge & Warner Millinery Co.,* 33 F.2d 1001 (D.Minn.1929); *In re Luber,* 261 F. 221 (E.D.Pa.1919).[3]

In this case, the trustee has conceded that the lien is valid under Illinois law. He has asserted no grounds which would permit the court to upset the lien as a fraudulent or preferential transfer.

Rather, the trustee contends that the bankruptcy laws automatically void the lien because of the nature of the retained property. We disagree.

■ The trustee also relies on the second sentence of Section 70(c) of the Bankruptcy Act[4] as supporting the district court's order. However, that sentence, called the "strong-arm clause," is designed to permit a trustee to prevail over prior liens where "under the applicable law such a creditor might prevail over prior * * * liens * * *." 4A Collier Bankruptcy ¶ 70.46 at 559–560. No such showing has been made here. The trustee also cites Section 70(e)(1) of the Bankruptcy Act[5] which permits the bankruptcy trustee to avoid fraudulent or voidable transfers. This record does not reflect any such transfer, so that Section 70(e)(1) also lends no support to the district court's order. These Sections would be appropriate were the trustee attacking the validity of the lien—similar to an attempt to set aside a lien on any other property—under either state or federal law. Nothing in those provisions of the Bankruptcy Act states or implies that this particular lien is automatically voided.

■ Although the lien is valid and consequently must be recognized by the bankruptcy court, this objective can be attained by less drastic means than with-

---

1. *Sanders v. Seelye,* 128 Ill. 631, 21 N.E. 601 (1889).

2. *Armstrong v. Zounis,* 304 Ill.App. 537, 26 N.E.2d 670 (1st Dist. 1940).

3. The trustee has called our attention to *In re Reiss' Will,* 200 Misc. 697, 107 N.Y.S.2d 168 (Sur.Ct.1951), but that was not a bankruptcy case and the state probate statute required all decedents' wills to be filed with the court, thus superseding the attorney's lien on the will.

4. Section 70(c) provides in pertinent part:
   " * * * The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or

not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists, * * *." (11 U.S.C. § 110(c))

5. Section 70(e)(1) provides:
   "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor." (11 U.S.C. § 110(e)(1))

holding access to the papers. One of the purposes of the Bankruptcy Act is to provide for an equitable distribution of the bankrupt's assets among his creditors. The trustee's ability to comb the bankrupt's records for fraudulent or otherwise invalid transactions is a necessary concomitant of that statutory goal. Therefore, we agree with the affirming district court that this documentary examination is "necessary for the proper administration of the bankruptcy estates." Justice will best be served by permitting such an examination subject to an order of the bankruptcy court preserving the priority afforded by Gay's lien.[6]

■ This result adequately protects Gay's interest in receiving his fees. Valid liens must be paid before the assets of the bankrupt can be distributed to the creditors. *City of Richmond v. Bird*, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; *Durand v. National Labor Relations Board*, 296 F.Supp. 1049, 1057 (W.D.Ark.1969); 3A Collier on Bankruptcy ¶ 64.02[2]. If there is any money in the estate, Gay will have a superior claim to the funds; if there is no money, he would not be paid in any event.[7]

Vacated and remanded for further proceedings consistent herewith.

6. *In re Allied Owners' Corporation, supra*, 72 F.2d at 256; *In re Luber, supra*, 261 F. at 223; *In re Eurich's Fort Hamilton Brewery*, 158 F. 644 (E.D.N.Y.1908); 4A Collier on Bankruptcy ¶ 70.87[2] at 1004 n. 8.

7. *In re San Juan Gold, supra*, 96 F.2d at 61 holds that making the attorney's fees a preferred claim in any plan of reorganization would not adequately protect the attorney's rights. The decision there appears to rest on the possibility that no plan of reorganization would be confirmed. In such a case, the attorney, having surrendered the papers, would have lost his only leverage to force payment of the fees. In this case, however, the proceeding will culminate with the distribution of assets. Because the attorney's leverage has been replaced with a valid lien, which must be satisfied before the assets are distributed in accordance with Section 64 of the Act (11 U.S.C. § 104), there is no injury to the attorney's rights.