**In re HIDDEN ACRES ASSOC.,**
**Tennessee general partnership,**
**Debtor.**

**MT. PLEASANT HEALTH CARE**
**ACQUIRORS, INC., Plaintiff,**

**v.**

**HIDDEN ACRES ASSOC., Gary T. Freeman, James S. Self, The Fellowship for the Humanities, Jack Srouji, Judy Kennedy and Linda Downham, Defendants.**

**Bankruptcy No. 90–10215.**
**Adv. No. 193–0190A.**

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 8, 1993.

Kevin T. Sommers, Boult, Cummings, Conners & Berry, Nashville, TN, for Boult, Cummings, Conners & Berry.

R. Jeneane Treace, Nelson, Mullins, Riley & Scarborough, Atlanta, GA, for Mt. Pleasant Health Care Acquirors, Inc.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

This matter is before the court on Boult, Cummings, Conners & Berry's ("BCCB") objection to the defendants' Motion to Compel BCCB to Produce Subpoenaed Documents. BCCB's objection raises the issue of whether an attorney can assert a retaining lien on subpoenaed documents that relate to a confirmed plan of reorganization in bankruptcy. Upon consideration of the relevant authorities, the court sustains BCCB's objection and concludes that an attorney's retaining lien is enforceable even though it may impact or even hinder a plan of bankruptcy reorganization. The following constitutes findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

### FACTS

The relevant facts are not in dispute. The plaintiff, Mt. Pleasant Health Care Acquirors, Inc. ("Mt. Pleasant"), originally brought this adversary proceeding asking the court to direct the defendants, Hidden Acre Associates ("the Debtor"), The Fellowship for the Humanities ("FFH"), and other individuals related to these entities to perform certain tasks necessary to execute a plan of reorganization proposed by Mt. Pleasant.

On August 18, 1992, this court entered an order confirming Mt. Pleasant's reorganization plan. Under the plan, Mt. Pleasant purchased all of the assets of the Debtor, consisting of a nursing home and the assets of FFH, a wholly-owned subsidiary of the Debtor. The plan further provided that defendants Gary T. Freeman and James S. Self, Jr., the general partners of the Debtor, would agree to assist Mt. Pleasant in the transfer of ownership and operation of both the Debtor and FFH. On March 9, 1993, in response to Mt. Pleasant's "Motion for Order Directing Debtor and Other Necessary Parties to Assist in Implementation of Plan," this court ruled that any person or entity that failed to cooperate or assist in the plan's implementation would receive no payment under the plan.

Pursuant to the terms of the plan and this court's subsequent order to assist, Mt. Pleasant directed the officers and directors of FFH to deliver copies of all corporate records of FFH to Mt. Pleasant. In compliance, defendant Self and defendants Srouji and Kennedy, president and secretary of FFH respectively, issued a Subpoena to BCCB on June 29, 1993. The Subpoena demanded the production of the bylaws and the minute book of FFH and any record or document indicating the qualifications for members of the Board of Directors of FFH. On July 2nd, BCCB filed an Objection to Subpoena and refused to produce the requested documents.

In response, on July 27th, defendants Srouji and Kennedy filed the Motion to Compel currently before this court, requesting an order that BCCB produce for inspection and review the documents subpoenaed. In objecting to the defendants' Subpoena and Motion to Compel, BCCB claimed to hold an attorney's retaining lien on the requested documents. Originally, the firm of Dearborn & Ewing was counsel for FFH. As FFH's counsel, Dearborn & Ewing prepared and possessed the bylaws, the minute book, and the other legal papers requested for production. BCCB became the assignee of Dearborn & Ewing's account receivable from FFH. Currently, the FFH account has an outstanding fee owed to BCCB in the amount of $7,390.08 for services rendered to FFH. BCCB, therefore, asserted a retaining lien in the amount of $7,389.08 on the requested records of FFH.

### DISCUSSION

■ Tennessee law clearly provides for a retaining lien on a client's papers. In *McDonald v. Charleston, C. & C.R. Co.*, 24 S.W. 252, 255–56 (Tenn.1893), the Tennessee Supreme Court held:

The law is that an attorney, in the absence of any contract to that effect, has a general or retaining lien for a general balance due him arising out of his professional employment upon all papers of his client which come into his possession in the course of his professional employment. This lien is one in which there is no right of sale. The

attorney simply can detain the papers from his client, and the lien is valuable to the extent the papers are necessary and indispensable to the client, or, as stated in some of the cases, to the extent the client can be worried thereby. It is a lien which cannot be actively enforced, and amounts simply to a mere right to retain the papers until a settlement and payment is made.

*See also* 3 Tenn.Jur. *Attorney and Client* § 21 (1982).

Dearborn & Ewing originally prepared and possessed the requested records for their client, FFH. BCCB properly asserted the retaining lien as assignor of Dearborn & Ewing's possessory rights to these records and right to payment of the account receivable from FFH.

■ In a bankruptcy context, the court in *In re San Juan Gold, Inc.*, 96 F.2d 60, 60 (2nd Cir.1938), enforced an attorney's retaining lien even though failure to secure the retained documents would impede the debtor's plan of reorganization. In *San Juan*, access to the debtor's books and records was necessary to properly carry out the debtor's reorganization. *Id.* The court, nevertheless, held that the attorney's retaining lien on these records should not be disregarded. *Id.* The court ordered the papers "delivered up upon condition that the fee be paid or security given for such sum as may be found to be due." *Id.*

■ The holding of the Tennessee Supreme Court in *McDonald*, 24 S.W. at 256, further indicates that an attorney's retaining lien will be lost not only if the records are physically surrendered in response to a subpoena, but also if the court permits inspection of the records pursuant to a discovery motion. As the court stated, the attorney's retaining lien is valuable only to the extent that it prevents the client from accessing "necessary and indispensable" papers. *Id.* The client must be "worried" by the lien for it to have any value to the attorney. *Id.*

Consequently, if the defendants in the present case were allowed to inspect and review the requested documents whenever they desired, the lien would cease to have any value. The attorney would be compelled

to let the client inspect the records and would be left to the task of merely storing the documents, thus having no recourse to collect his unpaid fee. *See also Bulk Oil Transports, Inc. v. Robins Dry Dock & Repair Co.*, 277 F. 25, 30–31 (2nd Cir.1921); *Brauer v. Hotel Assocs., Inc.*, 40 N.J. 415, 192 A.2d 831 (1963). For the foregoing reasons, the court denies Self's Motion to Compel BCCB to Produce the Subpoenaed Documents absent a provision to pay BCCB the $7,389.08 currently due as an account receivable from FFH.

The court hands down this decision, however, with the following limitation on its holding. Neither FFH nor the individual defendants seeking the records were the Debtor. Rather, this was a dispute among non-debtors who were involved in and impacted by the Debtor's reorganization. Had this involved the Debtor seeking its own records, the court would have faced a different issue and a potentially different result.

IT IS SO ORDERED.